Ben T. GALBRAITH, Petitioner,

v.

W. A. LACKEY, District Judge, Ewing C. Sadler, County Attorney and Dee Sanders, Sheriff of Pittsburg County, Oklahoma, Respondents.

No. A–12643.

Court of Criminal Appeals of Oklahoma.

June 3, 1959.

Geo. L. Hill, McAlester, for petitioner.

Mac Q. Williamson, Attorney Gen., Sam H. Lattimore, Asst. Atty. Gen., Ben P. Choate, Jr., Asst. County Atty., Pittsburg County, McAlester, for respondents.

POWELL, Presiding Judge.

Ben T. Galbraith presently a prisoner in the State Penitentiary at McAlester, where he is serving a life sentence by reason of conviction in the district court of Pittsburg County of the crime of murder, on July 23, 1958 filed in this Court, per se, his petition for a writ of mandamus. The purpose of the petition is to require the respondents to afford him a speedy trial on two additional murder charges now pending against him in said court. Rule to show cause was promptly issued, but response was not filed until September 25, 1958, the day of the hearing of the petition, when petitioner was present and testified. Following this, the parties filed briefs and on March 27, 1959 a supplemental petition was filed by Geo. L. Hill, Esq., now attorney for the petitioner, and further oral argument heard, and the cause submitted.

In the supplemental petition, counsel for petitioner, among other things, alleges:

"Petitioner would now show the court that on said 24th day of March, 1955, there was filed in the district court of Pittsburg. County, State of Oklahoma, four charges of murder against this petitioner.

"That subsequent to the filing of such petition, and prior to his trial upon any one of such charges, he was committed to the Eastern State Hospital at Vinita, Oklahoma, by said district court, for observation for a period of not to exceed ninety days, and during his said confinement in said hospital it was determined by the medical authority thereof that the defendant was presently insane, with which determination and report, the State of Okla-

homa took issue, and on or about June 23, 1955, a jury was duly impaneled and heard evidence upon the question of this petitioner's insanity, and on said date returned a verdict finding 'the defendant presently sane'.

"That the petitioner was thereafter tried upon one of said murder charges, being case number 5340, in said district court, and on August 13, 1955, the jury returned a verdict of guilty, and assessed his punishment at life imprisonment, and the petitioner was thereupon incarcerated·in the State Penitentiary at McAlester, Oklahoma.

"That at the trial upon the murder charge in said cause number 5340, in which the defendant was found guilty, as aforesaid, the defendant based his defense upon the charge of not guilty by reason of insanity at the time of the alleged crime.

"That no further proceedings were had in the three remaining cases until during the month of July, 1957, when the petitioner was placed on trial in said district court in case No. 5338. In that trial there was no plea of the petitioner being 'presently insane' and consequently there was no trial had upon the question of 'present insanity'. The plea of the petitioner in his defense of the charge was insanity 'at the time of the commission of the alleged crime' and he went to trial upon that issue, and on July 3, 1957 the jury returned a verdict of 'not guilty as charged in the information herein by reason of insanity.'

"The petitioner was, of course, an inmate of the state penitentiary at the time of this last mentioned trial, having been received at said penitentiary on August 16, 1955, upon the conviction in his case number 5340, as aforesaid.

"It will, therefore, be seen that almost two years elapsed from the date of his first conviction until his second trial.

"At the conclusion of the second trial, number 5338 aforesaid, the petitioner was returned to the State prison upon his life sentence in the first trial, number 5340, where he has been confined ever since, with exception of a very brief period of time that he was sent to the Central State Hospital for the insane at Norman, Oklahoma, where he remained only a few weeks, and was then returned to the State penitentiary, where he has been ever since, and where he now is."

Petitioner further alleges in substance that over a long period of time he has endeavored to get Ewing C. Sadler, the County attorney, to set down the remaining two cases pending against him, being numbers 5337 and 5339, which were filed March 24, 1955, and to try them. That petitioner after all other efforts failed did on March 23, 1958, file in the district court of Pittsburg County, acting per se, a petition for writ of habeas corpus, but never received a hearing, and hence the subsequent filing of his petition for writ of mandamus to compel trial on the two remaining cases pending against him.

It is also alleged:

"Petitioner further prays that he has never been legally determined to be an insane person. That on or about September 30, 1955, the Veteran's Administration, from whom he received a disability allotment which was connected to his service in the Armed Forces of the Unitd States of America, determined him to be incompetent and incapable of properly managing or taking care of his property, and that on October 16, 1956, a guardian of his property and estate was appointed for him by the County Court of Pittsburg County, State of Oklahoma, and that he is still under such guardianship, but petitioner reiterates that he has no guardian of his person and that he has never been judicially determined to be insane within the meaning of the law of the State of Oklahoma."

There was introduced into evidence a letter dated April 1, 1958, from W. A. Lackey, district judge of Pittsburg County (one of the respondents herein) addressed to petitioner, in which it was stated:

"I have discussed this matter with the county attorney, and with Mr. Whitsel [one of petitioner's prior attorneys], and we are all of the opinion that because of the verdict returned on July 3, 1957 [case No. 5338], where you were on trial that the jury found you not guilty by reason of insanity, and for that reason, until your sanity has been restored, by proper proceedings, this Court will have no authority to try you again."

Petitioner then prays that this Court order the district court of Pittsburg County to try him immediately, before an impartial judge, without a jury.

Respondents, answering the petition, say:

"That the petitioner, Ben T. Galbraith, is charged in the district court of Pittsburg County, Oklahoma, with the alleged offense of murdering his wife and their three (3) minor children. The defendant, Galbraith, was committed to the Eastern State Hospital at Vinita, Oklahoma, for observation. It was determined by the phychiatrists at said hospital from their examinations of Galbraith that he was insane. The State took issue with this finding and the case was set for trial before a jury duly impaneled for the purpose of determining whether or not Galbraith was mentally capable of aiding his attorneys in his defense. The jury in this case returned a verdict on the 23rd day of June, 1955, finding 'the defendant presently sane'. The defendant was then brought to trial on the charge of murder and he was found guilty and his punishment assessed at life imprisonment.

"At the time of the murder trial above referred to, Galbraith's defense was that he was insane at the time of

the commission of the offense and accordingly this issue was determined against him.

"In June, 1957 the defendant was again brought to trial on one of the other pending murder cases and the jury found him not guilty by reason of insanity at the time of the commission of the offense.

"At the present time, the petitioner herein is a ward of the County Court of Pittsburg County, Oklahoma, and has had a guardian appointed to administer his affairs, it having been determined by a sanity hearing duly held in the County Court of Pittsburg County, Oklahoma, that Ben T. Galbraith is presently mentally incompetent.

"Furthermore, the petitioner stated in his petition that his constitutional rights are being violated in that he is not being afforded a speedy trial on the two (2) remaining murder cases which are now pending against him. This contention is unfounded in view of the fact that the petitioner is now serving a life sentence in the Oklahoma State Penitentiary and for further reason that the two (2) cases pending against him involved capital offenses which could be dismissed and refiled against him at any future date."

The record and evidence heard by this Court presents a situation where the petitioner, a young physician, was charged in a case with murdering his wife, and in three other cases with murdering his three minor children; was convicted in one case and given a life sentence; found not guilty in one case by reason of insanity at the time of the act, and where two cases remain to be disposed of.

Petitioner, as indicated, has been very active since his incarceration, in endeavoring to obtain trials of the two remaining cases filed against him, even though he might receive the extreme penalty. We have seen that petitioner filed the original petition herein. He has written numerous letters to the Court. Then he obtained aid of counsel.

■ Persons charged with crime are entitled to trial without undue delay. Ordinarily the urgent and overall detriment caused by delay would be that if one had evidence which might show his innocence or circumstances that might show him guilty of an included offense, rather than the one charged, delay might prevent him from producing the required evidence by reason of death or departure of witnesses, or lapse of memory. Such detriment could apply against the State as well.

Whether actually in the within cases the defendant has defense witnesses we are not advised. It would appear that the State would surely suffer from delay.

First, we consider the written statement of the District Judge to the petitioner, heretofore quoted, to the effect that the State is precluded by reason of the verdict in one of the murder cases on July 3, 1957, where the jury found defendant not guilty by reason of insanity, and that the court had no authority to try petitioner again.

■ From the evidence before us, it appears that the jury did not find the petitioner "presently insane", but insane at the time of the commission of the act charged. Therein lies a vast distinction. And while such finding and the conduct of petitioner, presently, might raise in the court's mind a question as to the present sanity of the accused, that question would be resolved by a jury when one of the cases would come on for trial, and the jury would resolve such question. 22 O.S.A. § 1162. If the jury should find the petitioner presently sane, there still might be interposed the defense of insanity at time of the alleged commission of the act charged, which question would be submitted to the jury that would try him, or the court, if jury waived.

The fact that another jury in another case found the petitioner insane at the time of the commission of the crime there charged is not conclusive that they would

in a separate and different case find him not guilty by reason of insanity. We have seen this demonstrated by the finding of the jury in the first case tried.

■■ The fact that since the filing of the two cases now pending there has been a guardian appointed to receive disability pay from the Veteran's Administration, and where it was adjudged in the County Court of Pittsburg County that petitioner was incompetent and incapable of properly managing and taking care of his property, would not be conclusive of the issue of insanity. In fact, the guardianship was for the property of the petitioner. He was not adjudged insane. But even where a person may in the past have been committed to an insane asylum, such is not conclusive of the insanity of such person at a later time. Adams v. State, 49 Okl.Cr. 94, 292 P. 385; Prescott v. State, 56 Okl.Cr. 259, 37 P.2d 830; People v. Prosser, 56 Cal.App. 454, 205 P. 869; People v. Calhoun, 9 Cal.App. 2d 97, 48 P.2d 754; Fleming v. Bithell, 56 Idaho 261, 52 P.2d 1099; Fetterley v. Randall, 92 Cal.App. 411, 268 P. 434.

In a note in 27 A.L.R.2d 150, a long list of cases is cited from many states, wherein those courts which have recognized, in criminal cases, a presumption of the continuing insanity of an accused raised by evidence that, at a prior time, he was shown to have been insane, are agreed that the presumption is not conclusive as to defendant's insanity at the time under investigation, but may be met and overcome by evidence showing his mental competence or responsibility at that time.

■■ The trial court would cover the matter by a proper instruction.[1]

■■ Of course, as suggested by repondents, the charge in each of the two pending cases in question, being murder,

they may not be barred by operation of the statute of limitations. 22 O.S.1951 § 151. They might be dismissed and under proper circumstances, depending on the facts in such case, refiled at a later date; for example, when further or better evidence might be available, and we have said in Wilson v. State, 89 Okl.Cr. 421, 422, 209 P.2d 512, 212 P.2d 144, and other cases, that the county attorney acts under a discretion committed him for the public good, and that one of his most important functions is to select, out of what the law permits, the charges which he will bring against offenders. However, we would now point out that once having elected and commenced a prosecution, it should be vigorously pursued unless it develops that the State for some reason cannot produce sufficient evidence, or has other good and sufficient reasons for not trying the case. As we said in Thacker v. Marshall, Okl.Cr., 331 P.2d 488, 490:

> "A prosecution means not simply the filing of the preliminary complaint, but the continuous following up, through instrumentalities created by law, of a person accused of a public offense with a steady and fixed purpose of reaching a judicial determination of the guilt or innocence of the accused."

Having determined that the reason advanced for not trying the defendant is not sufficient to justify delay, and it further appearing in addition to what has been said that to permit the cases to endlessly pend with no apparent intention and purpose of reaching a judicial determination of the guilt or innocence of the accused is abhorrent to efficient administration, it is the conclusion of this Court that the County Attorney of Pittsburg County should either dismiss the two cases in question, or schedule same on his next docket for trial.

1. The Court of Criminal Appeals has held that the procedure set forth in criminal statutes to determine whether the accused was mentally competent to make a rational defense (see as to test of mental responsibility: Roe v. State, 17 Okl.Cr. 587, 191 P. 1048) was not repealed by the Mental Health Law providing for humane care and treatment of persons who may be mentally ill or mentally retarded. 22 O.S.1951 §§ 1161–1169; 43A O.S.Supp. § 51; Loel v. State, Okl.Cr., 300 P.2d 1013.

It is therefore ordered that the two cases now pending in the district court of Pittsburg County wherein Ben T. Galbraith, petitioner herein, is charged with murder, either be scheduled for early disposition, or that the same be dismissed.

BRETT, J., concurs.

NIX, J., not participating.